UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

JOSEPH ISHAM,

        Petitioner,

v.

SCOTT PETER FISHER,

        Respondent.

Civil No. 10-1799 (PAM/AJB)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Joseph Isham's ("Petitioner") petition [Docket No. 1] for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).

Petitioner is a federal prison inmate and is currently designated to the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). Petitioner is serving a 24-month sentence, followed by three years of supervised release for Possession of Stolen Firearms in violation of 18 U.S.C. § 922(j). See Buege Decl., Attach. A [Docket No. 8].[1] This sentence was imposed by Judge Crabb in the United States District Court for the Western District of Wisconsin. Id. Petitioner is projected to be released on January 19, 2011, due to Good Conduct Time ("GCT"). Id.

Petitioner now seeks relief under an application for writ of habeas corpus. Petitioner challenges the determination by the Bureau of Prisons ("BOP") that Petitioner committed the prohibited act of fighting, a violation BOP policy at Code 201. More specifically, Petitioner argues that he was denied his constitutionally protected due process rights when the BOP disallowed

---

[1]Buege Declaration and Attachments at Docket 4 were later refiled at Docket 8 because pages were missing from the initial filing.

Petitioner 27 days of GCT. He seeks expungement of the disciplinary record and restoration of the lost GCT.

On April 27, 2010, the Respondent was ordered to show cause why the writ should not be granted. [Docket No. 2]. Respondent's return filed on May 27, 2010, opposes Petitioner's § 2241 motion, asserting that Petitioner's claim should be dismissed because the discipline procedures used in this case satisfy federal case law and the revocation of Petitioner's GCT satisfies the "some evidence" standard.

## FINDINGS

### I. Background

On July 7, 2009, Petitioner was involved in a physical altercation with two other inmates on the recreation yard. See Pet. 7 [Docket No. 1].² Around 6:00 p.m., Petitioner was near the entrance of the recreation yard when two other inmates made remarks to the Petitioner, regarding his tattoo. Id.; see also Buege Decl. ¶ 4. One of the inmates approached Petitioner and punched him in the face with a closed fist. See Pet. 7. Petitioner's back was placed up against a fence, so he did not have a route to escape the attacker. Id. Petitioner attempted to block the blows, but ultimately he punched the inmate back in retaliation. Id. The third inmate approached the fight and struck Petitioner in the face two more times. See Buege Decl., Attach. B. Petitioner attempted to punch the third inmate in the face with a closed fist, but missed completely. Id. Petitioner sustained periorbital edema to the left eye, lacerations in his upper and lower eyelid, and abrasions on his forehead. See Pet. 18. The first inmate who initially struck Petitioner suffered from lacerations to

---

²The Petition at Docket No. 1 consists of multiple documents. The cited page number refers to the docket page number as opposed to a document page number.

his ring finger and little finger on his right hand. Id. The first inmate also had an abrasion on his left eye. Id. The third inmate suffered redness and swelling of the right hand. Id.

Petitioner received the incident report charging him with fighting, a Code 201 violation of BOP policy, and was advised of his rights on July 13, 2009. Id. at 18. Petitioner indicated that he understood those rights and chose not to comment. Id.; see also Buege Decl. ¶ 5. The investigating lieutenant concluded that the incident report was correct and justified based on the information in the report, thus, it was referred to the Unit Discipline Committee ("UDC").[3] Petitioner's hearing before the UDC took place on July 16, 2009. See Buege Decl. ¶ 7. Petitioner stated that he was acting in self-defense and that he was only protecting himself. See Pet. 7. The UDC recommended a sanction of a loss or disallowance of 14 days of GCT, 15 days of disciplinary segregation, and 30 days loss of commissary access if the Discipline Hearing Officer ("DHO") found that Petitioner committed a prohibited act in the prison. Id. at 19. The UDC subsequently referred the report to the DHO[4] for further proceedings. See Buege Decl. ¶ 8. The DHO did not prepare the incident report, and he was not the investigating officer, a member of the UDC, or a witness to the incident, thus making him an impartial decision maker. Id. at ¶ 11.

On July 16, 2009, Petitioner received a written statement from the DHO explaining his rights for the upcoming hearing. Id. at Attach. C. Petitioner did not want a staff member to represent him at the hearing, nor did he wish to call any witness. Id. During the proceeding in front of the DHO on July 22, 2009, Petitioner explained his side of the story and neither admitted nor denied the charge of fighting. See Pet. 21. The DHO relied on the evidence presented at the

---

[3] See 28 C.F.R. § 541.15.

[4] See 28 C.F.R. § 541.16.

hearing, which included the incident report, supporting memorandums from staff, inmate injury assessments, and video footage of the incident. Id. At the conclusion of the hearing, the DHO found that Petitioner was in violation of Code 201, which prohibits the act of fighting. Id. The DHO sanctioned Petitioner with disallowance of 27 days of GCT and 30 days of disciplinary segregation in accordance with 28 C.F.R. § 541.13 and BOP policy. Id. Petitioner was informed of his appeal rights through the Administrative Remedy procedure. Id.

Petitioner received a copy of the DHO's report and was also advised of his appeals rights. See Buege Decl. ¶ 12. Petitioner appealed the DHO hearing, but his appeals were denied. Id. at ¶ 15. Respondent does not contend that Petitioner failed to exhaust administrative remedies before seeking relief from this Court. See Resp. 8.

**II. Discussion**

A prisoner must be afforded at least some procedural due process protections before being deprived of good-time. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Nonetheless, a prisoner is not entitled to the full panoply of procedural rights that accompany a criminal prosecution when that prisoner is facing a loss of good-time credits. Id. Constitutional due process mandates only that a prison disciplinary action satisfy the simple procedural requirements prescribed in Wolff. Therefore, prisoners facing a loss of good-time credits must be given (1) advanced written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his/her defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002)(citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)). In addition, due process requires that there be "some evidence" in the record

4

supporting the disciplinary determination. Id.

In this case, the record does not support Petitioner's assertion that he was disciplined in violation of his due process rights. Petitioner does not dispute that he received the incident report on July 13, 2009, which afforded him notice of the fighting charge. See Buege Decl. ¶ 5; see also Pet. 18. Following the incident report, Petitioner was present at proceedings before a UDC on July 16, 2009[5] and a hearing before a DHO on July 22, 2009.[6] Petitioner was advised of his rights prior to both hearings, including the right to a staff representative and the right to present witnesses and documentary evidence. See Buege Decl., Attach. B ¶ 24, Attach. C. Finally, Petitioner was provided with a written report of the hearing officer's decision explaining the evidence the DHO relied on in charging Petitioner with fighting, as well as his reasons for the sanctions imposed, including the loss of 27 days of GCT. See Pet. 21 ¶ 8. Thus, from a procedural standpoint, the Court finds that Petitioner was disciplined in accordance with Wolff, and there was no violation of his due process rights in that regard.

As a fact issue, Petitioner specifically claims that he was acting in self-defense due to imminent fear for his life and thus should not be subjected to the loss of GCT. However, this does not negate the finding that the Petitioner was in fact in a fight in violation of Code 201. Fighting is defined as "a hostile physical or verbal encounter or engagement between two or more persons." Pet. 10. There is no valid defense of self-defense to the violation of Code 201. Id. The Supreme Court has held that the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record." Hill, 472 U.S. at

---

[5] See Buege Decl. ¶ 7; see also Attach. C.

[6] See Buege Decl. ¶ 10; see also Attach. D.

454. This standard is satisfied:

> if "there is some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Comm'r of Immigr., [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is <u>any</u> evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board.

<u>Id.</u> at 455-56 (emphasis added). The findings of a prison disciplinary authority cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. <u>Id.</u> at 457. Therefore, "[r]evocation of good time credits is not comparable to a criminal conviction, ... [citation omitted], and neither the amount of evidence necessary to support such a conviction, ... [citation omitted], nor any other standard greater than some evidence applies in this context." <u>Id.</u> at 456. Simply stated, where there is at least some evidence to support the hearing officer's decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met.

The Petitioner admits to being involved in a physical altercation, and never denies that he fought with another inmate. <u>See</u> Buege Decl. ¶ 11; <u>see also</u> Attach. B and. D. Petitioner specifically argues that he acted in self-defense to an immediate threat of serious bodily injury with no reasonable ability to retreat or escape. <u>See</u> Pet. 10. However, the BOP does not consider self-defense as a valid reason to engage in a fight. <u>Id</u>. Therefore, the claim of self-defense will not excuse the Petitioner from the consequences of his actions. The DHO looked at all the evidence and found that the Petitioner did in fact commit the charged violation.

In this case, the Court finds that at the minimal "some evidence" standard has been

satisfied. DHO partially based his decision on reporting from the investigating lieutenant, who stated that Petitioner was struck in his facial and head areas by another inmate. The report also indicates that Petitioner retaliated by striking with closed fists to the facial area of the other inmate. Petitioner was attacked by a third inmate who struck Petitioner in the head twice. Petitioner retaliated by punching back with a closed fist, but he missed the third inmate. The report stated that all three inmates suffered injuries. The DHO also considered the statement that Petitioner gave to the UDC that Petitioner was acting in self-defense and did nothing to provoke the fight. See Pet. 21; see also Buege Decl., Attach. E. In addition, the DHO looked at the CCTV video of the incident, and the results of the Injury Assessment Report to help support his decision. Id.

The DHO took into consideration all of the available evidence, and determined that Petitioner committed a Code 201 violation. Wolff provides that inmates be given an opportunity to persuade an impartial decision maker that he did not commit the prohibited conduct as alleged. Petitioner was given such an opportunity, and the DHO was not persuaded by his claims. Based on all the evidence, the DHO reasonably concluded that Petitioner committed the prohibited act and sanctioned him in accordance with policy. The disciplinary proceeding by which Petitioner was sanctioned comported with the due process requirements set forth in Wolff and Hill. Petitioner's petition for a writ of habeas corpus should therefore be denied.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] be **DENIED**; that this action be **DISMISSED WITH PREJUDICE**; and that **JUDGMENT OF DISMISSAL** be entered.

Dated:   September 23, 2010

   s/Arthur J. Boylan
Arthur J. Boylan
United States Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before October 7, 2010.